UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KANATBEK ALMAZBEK UULU,<br><br>        Petitioner,<br><br>    v.<br><br>WARDEN, ET AL.,<br><br>        Respondents. | No. 1:25-cv-01812-WBS-CKD<br><br>MEMORANDUM AND ORDER |

----oo0oo----

Petitioner, a citizen of Kyrgyzstan, entered the United States unlawfully on December 24, 2024, was stopped by border officials and taken into custody, and has since been detained. (See Docket No. 1 at 5-7.) Upon his arrival to the United States, petitioner also raised an asylum claim that is currently pending. (See Docket No. 14 at 1.)

On February 2, 2026, petitioner filed the instant motion for temporary restraining order, in which he argues that his continued detention violates the protections conferred by the

1

Due Process Clause.  (See Docket No. 12.)  The court held oral argument in the matter on February 12, 2026.  (See Docket No. 18.)

Standard for Temporary Restraining Order

"The standard for a [temporary restraining order] is the same as for a preliminary injunction." Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The last two factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).

Likelihood of success on the merits is "the most important factor in determining whether a preliminary injunction is warranted." Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks omitted).  "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy." Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation omitted).  A mere possibility of success is insufficient to satisfy this factor; instead, a petitioner must demonstrate "a strong likelihood of

success on the merits."  Save Our Sonoran, Inc. v. Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

The court wishes to clarify once more that the proper test to apply here is the Winter test, not the so-called "serious questions" test, under which a petitioner may be awarded a preliminary injunction if they demonstrate "serious questions going to the merits" and a "hardship balance that tips sharply towards [them]," Alliance for the Wild Rockies v. Cottrell, 632 F. 3d 1127, 1131 (9th Cir. 2011).

In Winter, the Supreme Court set forth a four-part test for determining when the grant of a preliminary injunction is warranted.  See 555 U.S. at 20.  Three years later, despite the Supreme Court's admonition, the Ninth Circuit held that the "serious questions" test survived Winter.  See Cottrell, 632 F. 3d at 1131-32.  But just last year, the Supreme Court went back and held that, "absent a clear command from Congress, courts must adhere to the traditional four-factor test" for granting a preliminary injunction articulated in Winter.  Starbucks Corp. v. McKinney, 602 U.S. 339, 346 (2024).  Thus, although the Ninth Circuit has not directly confronted the continued viability of the "serious questions" test post-Starbucks, the Supreme Court's command is clear:  because there is no "clear command from Congress" to the contrary, the "serious questions" test may not be used.  See id.

Moreover, even assuming that the "serious questions" test remains viable after Winter and Starbucks, it would nevertheless be inapplicable here, where petitioner is seeking a

3

mandatory injunction.

"A mandatory injunction orders a responsible party to take action." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F. 3d 873, 878-79 (9th Cir. 2009) (internal citations and quotation marks omitted).  It is subject to a "doubly demanding" standard and requires the moving party to "establish that the law and facts clearly favor [his] position, not simply that []he is likely to succeed." Garcia v. Google, Inc., 796 F. 3d 733, 740 (9th Cir. 2015) (emphasis in original).  "In plain terms, mandatory injunctions should not issue in doubtful cases." Id. (citation omitted).

Other judges in this circuit have found that the serious questions test is inapplicable when a petitioner seeks a mandatory injunction. See, e.g., Cruz Uitz v. Noem, No. cv-25-06420 MWF (AJRX), 2025 WL 2995008 (C.D. Cal. Sept. 23, 2025) (declining to adopt the serious questions test in immigration detention context because a mandatory injunction was requested); Jamgotchian v. Ferraro, No. 822-cv-01893 FWS KES, 2023 WL 2396352, at *3 n.3 (C.D. Cal. Feb. 7, 2023) ("The Court observes that some district courts decline to apply the 'serious questions' test in cases seeking a mandatory injunction on the basis that it is inconsistent with the heightened standard applicable to such relief.") (collecting cases), rev'd on other grounds, 93 F. 4th 1150.

Here, petitioner asks the court to order his release from custody or that respondents afford him a bond hearing. (Docket No. 12 at 2.)  In similar circumstances, courts

4

have acknowledged that "direct[ing] the government to affirmatively hold new hearings it would not otherwise have held" may constitute a mandatory injunction. Hernandez v. Sessions, 872 F. 3d 976, 998-99 (9th Cir. 2017); see also Doe v. Becerra, 787 F. Supp 3d 1083, 1090 (E.D. Cal. 2025) (acknowledging uncertainty regarding whether custody release and bond hearing requests in the immigration detention context may constitute a mandatory injunction); Salazar v. Kaiser, No. 1:25-cv-01017 JLT SAB, 2025 WL 2456232, at *8 (E.D. Cal. Aug. 26, 2025) (same).

The court finds that ordering respondents to release petitioner or to provide him with a bond hearing that respondents would not have otherwise provided constitutes a mandatory injunction. Petitioner does not merely seek to "freeze[] the positions of the parties," Heckler v. Lopez, 463 U.S. 1328, 1333 (1983); rather, petitioner asks the court to compel respondents to affirmatively alter the status quo by providing him with additional procedural protections.

Accordingly, the court declines to apply the "serious questions" test and therefore analyzes petitioner's motion under the test articulated in Winter, 555 U.S. at 20.

Background

This case, like the dozens of substantially similar cases this court has adjudicated in the last few months, "involves [the] pressing national problem . . . [of] unlawful aliens residing in our country," Certain Named & Unnamed Non-Citizen Child. & Their Parents v. Texas, 448 U.S. 1327, 1331 (1980). The Supreme Court has long "noted" the "dimensions" of

5

this "problem." I.N.S. v. Delgado, 466 U.S. 210, 223 (1984) (Powell, J., concurring). In 1984, then-recent estimates placed the number of unlawful noncitizens residing in the United States between 2 and 12 million, see id.; the government estimates that number has increased to "at least 15 million people" as of last year, Noem v. Vasquez Perdomo, 146 S. Ct. 1, 1 (2025) (Kavanaugh, J., concurring).

Additionally, prior to 1996, "an 'anomaly' existed 'whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully.'" Chavez v. Noem, 801 F. Supp. 3d 1133, 1140 (S.D. Cal. 2025) (quoting Torres v. Barr, 976 F. 3d 918, 928 (9th Cir. 2020)). Specifically, the provisions of the Immigration and Nationality Act ("INA") were structured such that "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." Hing Sum v. Holder, 602 F.3d 1092, 1100 (9th Cir. 2010).

Against this troubled backdrop, Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). See Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). IIRIRA "substantially amended the Immigration and Nationality Act of 1952 ('INA') and established a new summary removal process for adjudicating the claims of aliens who arrive in the United States without proper documentation." Smith v.

6

U.S. Customs & Border Prot., 785 F. Supp. 2d 962, 965 (W.D. Wash. 2011), aff'd, 741 F.3d 1016 (9th Cir. 2014) (quotations omitted). Relevant here, IIRIRA provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission," 8 U.S.C. § 1225(a)(1), and that such "applicant[s] for admission" are subject to mandatory detention, id. § (b)(2)(A). Thus, among other things, "IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures," Garibay-Robledo v. Noem, No. 1:25-cv-177-H, 2025 WL 3264482, at *4 (N.D. Tex. Sept. 15, 2025), putting an end to the above-described "anomaly," Chavez, 801 F. Supp. 3d at 1140.

"For many years" after the enactment of IIRIRA, "the understanding — shared by the Executive and the Supreme Court — was that [8 U.S.C. §] 1226, not [8 U.S.C. §] 1225, governed immigration arrests conducted within the interior of the United States." Bernal v. Albarran, No. 25-cv-09772 RS, 2025 WL 3281422, at *5 (N.D. Cal. Nov. 25, 2025). The government endeavored to correct this understanding on July 8, 2025, when the Departments of Homeland Security ("DHS") and Justice issued a policy memorandum "requiring all 'applicants for admission' . . . to be mandatorily detained during removal proceedings pursuant to [8 U.S.C.] § 1225(b)(2)." Garcia v. Noem, --- F. Supp. 3d ----, 2025 WL 2549431, at *1 (S.D. Cal. Sept. 3, 2025) (citation omitted). This memorandum further clarified that such noncitizens were "ineligible" for "bond hearing[s] before an immigration judge and may not be released for the duration of

7

their removal proceedings absent a parole by DHS." Id. (citation modified). The Board of Immigration Appeals ("BIA") "subsequently" adopted DHS' new approach in a "reasoned opinion" concluding that "the practice of conducting bond hearings for aliens who entered the United States without inspection was not supported by the plain language or any reasonable interpretation of the INA." Liang v. Almodovar, No. 1:25-cv-09322 MKV, 2025 WL 3641512, at *4 (S.D.N.Y. Dec. 15, 2025) (citation modified); see Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) (BIA decision).

     DHS was entitled to change its interpretation of 8 U.S.C. § 1225 as it did last July. Cf. Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."). This change appears to have been precipitated by circumstances which made it a practical necessity. Approximately two months before issuing the policy memorandum, DHS noted that a "mass influx of aliens" was occurring, and that "[w]ithout controls in place . . . to stem the influx," it would "lose[] its capacity to hold all aliens as required by the INA." Finding a Mass Influx of Aliens, 90 Fed. Reg. 13622, 13623 (Mar. 25, 2025) (citing 8 U.S.C. § 1225(b)). This influx "present[ed] urgent circumstances requiring an immediate federal response," id., and the policy memorandum issued shortly thereafter served precisely the function called for by those circumstances.

Statutory Framework

8

    The court acknowledges at the outset the fluctuating and complex tangle of issues presented by DHS' recent shift in its approach to detention. See, e.g., Echevarria v. Bondi, No. cv-25-03252 PHX DWL (ESW), 2025 WL 2821282 (D. Ariz. Oct. 3, 2025) (noting application of the statutes "as presenting a complicated and debatable question"); cf. Torres v. Barr, 976 F. 3d 918, 923 (9th Cir. 2020) ("The complex provisions of the INA have provoked comparisons to a 'morass,' a 'Gordian knot,' and 'King Minos's labyrinth in ancient Crete." (internal citations and quotation marks omitted)).

    Here, recent decisions of other judges in the Eastern District of California have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all "applicants for admission." See, e.g., Velasquez v. Chestnut, No. 1:26-cv-00576 DJC JDP, 2026 WL 263363, at *1 (E.D. Cal. Feb. 2, 2026); Crispin M. C. v. Noem, No. 1:25-cv-01487 KES HBK (HC), 2026 WL 70553, at *4-7 (E.D. Cal. Jan. 8, 2026); Singh v. Chestnut, No. 1:26-cv-00330 (HC), 2026 WL 249530, at *2 (E.D. Cal. Jan. 30, 2026).

    Many decisions of district court judges elsewhere have also reached the conclusion that Section 1226(a), not Section 1225(b), provides the appropriate framework for noncitizens already residing in the United States. See, e.g., Perez v. Walsh, No. 1:25-cv-14995, 2026 WL 44777 (N.D. Ill. Jan. 7, 2026); Llanes Tellez v. Bondi, No. 25-cv-08982 PCP, 2025 WL 3677937, at *8 (N.D. Cal. Dec. 18, 2025); Ambroladze v. Maldonado, No. 26-cv-0473 (PKC), 2026 WL 295405, at *2 (E.D.N.Y. Feb. 4, 2026).

9

The undersigned, however, has repeatedly found that respondents' new interpretation of 8 U.S.C. § 1225 comports with that statute's plain text, whereas petitioner's interpretation (i.e. respondents' prior interpretation) does not. See, e.g., J.E.P.M v. WOFFORD, et al., No. 1:26-cv-00316 WBS CKD, 2026 WL 125270, at *2 (E.D. Cal. Jan. 16, 2026) (collecting this court's such cases). In a thorough opinion, the only circuit court to have confronted this issue thus far recently arrived at the same conclusion. See Buenrostro-Mendez v. Bondi, --- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (opinion of Jones, J.).

8 U.S.C. § 1225(b)(2)(A) requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

A neighboring provision, 8 U.S.C. § 1225(a)(1), clarifies that "[a]n alien present in the United States who has not been admitted ... shall be deemed for purposes of this Act an applicant for admission." The term "admission" is in turn defined "with respect to an alien" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Id. § 1101(a)(13)(A) (emphasis added). The inclusion of the word "lawful" in the foregoing definition is critical: it expressly clarifies that an individual may only be considered "admitted" to the United States if their presence therein is with permission.

This definition comports with the plain meaning of the

10

word "admit," which is defined in Merriam-Webster's Dictionary as "to <u>allow</u> entry (as to a place, fellowship, or privilege)." Admit, Merriam-Webster, https://www.merriam-webster.com/dictionary/admit (last visited Feb. 3, 2026) (emphasis added).  To construe the statute otherwise -- "that the mandatory detention provision of 1225 categorically does <u>not</u> apply to aliens who are present in the United States as a result of their illegal entry into the country" -- would "fl[y] in the face of defined statutory text" and contravene the plain meaning of the word "admit."  See Chen v. Almodovar, No. 1:25-cv-8350 MKV, 2025 WL 3484855, at *5 (S.D.N.Y. Dec. 4, 2025) (emphasis added).

By contrast, 8 U.S.C. § 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained" pending their final removal decision.  "Thus, one express requirement to fall within § 1226(a) — and the critical one here — is that the alien was arrested on a warrant issued by the Attorney General."  Vargas Lopez, 802 F. Supp. 3d 1132, 1139 (D. Neb. 2025).  Further, pursuant to the Laken Riley Act (the "Act"), subsection (c) of 8 U.S.C. § 1226 was amended to mandate detention for specific categories of noncitizens who have been charged with certain crimes.  See 8 U.S.C. § 1226(c)(1)(E); Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (Jan. 29, 2025) (Laken Riley Act).

The term "applicant for admission" in 8 U.S.C. § 1225 "functions as a legal designation -- describing an individual's legal status for purposes of the removal scheme."  Alonzo v.

11

Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025) (collecting cases).  And petitioner is subject to this legal designation because he is an "alien," 8 U.S.C. § 1225(a)(1), who is "present in the United States," id., and who "has not been admitted," id., since his entry into the United States was not a "lawful entry . . . after inspection and authorization by an immigration officer," id. § 1101(a)(13)(A).  See Mejia Olalde v. Noem, No. 1:25-cv-00168 JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025).  Petitioner may not "elide[]" this legal designation as an "'applicant for admission' merely because he has already entered the United States."  Alonzo, 2025 WL 3208284, at *4; see also Chen, 2025 WL 3484855, at *4 (same conclusion).

   Petitioner argues further that 8 U.S.C. § 1225 is inapplicable to him now because he was initially released on parole pursuant to 8 U.S.C. § 1226 (see Docket No. 8 at 6).  This argument is unavailing because the fact "that prior Administrations decided to use less than their full enforcement authority under § 1225(b)[] does not mean they lacked the authority to do more."  Buenrostro-Mendez, 2026 WL 3233330, at *8.  "In contrast to past administrations, the current Administration has chosen to exercise a greater portion of its authority by treating applicants for admission under the provision designed to apply to them."  Id. at *9.

   Petitioner was not "require[d]" to have initially been released on parole pursuant to 8 U.S.C. § 1226; he was, in fact, "prohibit[ed]" from receiving such relief under the proper

12

interpretation of 8 U.S.C. § 1225 and therefore cannot "turn back the clock to a time when such relief was available as a matter of practice." Martinez v. Villegas, No. 1:25-cv-256-H, 2026 WL 114418, at *7 (N.D. Tex. Jan. 15, 2026) (citation modified).

Any reliance to the contrary on Jennings v. Rodriguez, 538 U.S. 281 (2018), is also misplaced. Jennings did not declare unequivocally that 8 U.S.C. § 1225 does not apply in cases such as petitioner's. Rather, the Supreme Court stated that 8 U.S.C. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" the more specific categories of § 1225(b)(1). Jennings, 583 U.S. at 287; see also Vargas Lopez, 802 F. Supp. 3d at 1142 ("The Court concludes that the plain language of § 1225(b)(2) and the 'all applicants for admission' language of Jennings permit the DHS to detain [petitioner] under § 1225(b)(2).") Moreover, the Court's introductory language in Jennings dispenses with any remaining doubt by clarifying that "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Id.

This court's interpretation of 8 U.S.C. § 1225 also does not render the Laken Riley Act superfluous. First, "Congress often takes a 'belt and suspenders' approach to legislation." Mejia Olalde, 2025 WL 3131942, at *4 (quoting Atl. Richfield Co. v. Christian, 590 U.S. 1, 14 n.5 (2020)).

Second, the Laken Riley Act could not have been passed to affect the application of § 1225, for the simple reason that the Act was passed before respondents' current interpretation of

13

8 U.S.C. § 1225 was even issued.  The Act "could not therefore 'perform the work' of the [more] expansive reading of Section 1225, because that work had not yet been done."  Valencia v. Chestnut, --- F. Supp. 3d ----, 2025 WL 3205133, at *4 (E.D. Cal. Nov. 17, 2025).  See Buenrostro-Mendez, 2026 WL 323330, at *7 (noting that the Laken Riley Act was passed "at a time when the Executive was still declining to exercise its full enforcement authority under the INA").

Third, and regardless, DHS' current interpretation of the phrase "applicant for admission" as it appears in 8 U.S.C. § 1225 does not render the Act superfluous because "[t]he Attorney General may still exercise her detention discretion under § 1226(a) for any other aliens falling under that subsection who are not charged with the specific crimes carved out by" the Act.  Chavez, 801 F. Supp. 3d at 1141.

"[A]n administrative agency is permitted to change its interpretation of a statute, especially where the prior interpretation is based on error, no matter how longstanding."  Chisholm v. F.C.C., 538 F.2d 349, 364 (D.C. Cir. 1976).  For that matter, "[y]ears of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text."  Buenrostro-Mendez, 2026 WL 323330, at *8 (emphasis added).  Rectifying prior error is precisely what occurred here.  For the above reasons, the court again concludes that 8 U.S.C. § 1225 applies to petitioner.

### Procedural Due Process

Petitioner argues that his ongoing detention, which has

spanned approximately fourteen months thus far, violates the Due Process Clause because it has no definite termination point. (See Docket No. 12 at 6.)

The factual circumstances of petitioner's detention are relevant to this claim.  Since his detention commenced on December 24, 2024, petitioner has requested that his immigration court hearings be continued no fewer than nine times.  (See Docket No. 14 at 7-8.)  While some of these requests may be excused on the grounds that they were made to obtain counsel or a language interpreter, petitioner nevertheless requested five continuances over approximately four months to "obtain additional evidence."  (See id. at 7.)

As petitioner observes, and respondents appear to agree, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  To date, however, every appellate court to have considered the constitutionality of a petitioner's prolonged detention has found that the length of such detention did not violate the Due Process Clause.  See G.P. v. Garland, 103 F. 4th 898, 902 (1st Cir. 2024) (collecting cases).  In each of those cases, the length of detention was significantly longer than petitioner's detention here.  See id. at 899 (detention for approximately four years); Soberanes v. Comfort, 388 F.3d 1305, 1308 (10th Cir. 2004) (detention for approximately two years); Prieto-Romero v. Clark, 534 F. 3d 1053, 1056 (9th Cir. 2008) (detention for approximately three years); Castaneda v. Perry, 95 F. 4th 750, 753 (4th Cir. 2024) (detention

15

for approximately five years); Martinez v. Larose, 968 F.3d 555, 558 (6th Cir. 2020) (detention for approximately two-and-a-half years).

Review of those cases reveals that, to determine if a petitioner's detention appears to be indefinite, courts look to whether:  (1) the petitioner's immigration proceedings have been infected with "bad faith or undue delay by the agency," G.P., 103 F. 4th at 902; (2) the petitioner's detention is "directly associated with a judicial review process that has a definite and evidently impending termination point," and is thus "akin to detention during the administrative review process [that] was upheld [by the Supreme Court] in Demore v. Kim," Soberanes, 388 F.3d at 1311; see also Castaneda, 95 F. 4th at 759 (same); and (3) there is "evidence that [the petitioner] is unremovable because the destination country will not accept him or his removal is barred by our own laws," Prieto-Romero, 534 F. 3d at 1063 (9th Cir. 2008).

The record here does not support that the delays in petitioner's immigration proceedings have been either "undue" or infected by "bad faith."  See G.P., 103 F. 4th at 902.  Rather, petitioner, by repeatedly requesting continuances to obtain additional evidence, is responsible for at least four months of his alleged delay.  (See Docket No. 14 at 7.)  Petitioner's proceedings before immigration court appear to be moving forward in due course, as evidenced by the fact that he has a hearing before that court scheduled for February 25, 2026.  (See Docket No. 14 at 8.)

16

    Further, petitioner's detention is "directly associated with [the] judicial review process" of his application for asylum, and is thus akin to "detention during the administrative review process, which was upheld [by the Supreme Court] in Demore v. Kim." Soberanes 388 F.3d at 1311.  Finally, there is no evidence that petitioner is stuck in a "'removable-but-unreviewable limbo,'" as the petitioners in Zadvydas were." Prieto-Romero, 534 F. 3d at 1063.  To the contrary, although petitioner's "detention lacks a certain end date, . . . this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in Zadvydas."  Id. (emphasis in original).

    For the above reasons, petitioner has failed to demonstrate a likelihood of success on the merits of his procedural due process claim.  Thus, the court "need not consider the other preliminary injunction factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).

## Conclusion

    It bears reiterating once more that Congress has given DHS the very difficult task of ensuring that the millions of aliens who are unlawfully within the United States are detained and removed as prescribed by law.  Indeed, "the Department of Justice Inspector General found in 1997 that when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States," a "situation" that "exists today on a much larger scale." Buenrostro-Mendez v. Bondi, 2026 WL 323330, at *9 (citation modified).  It is not the courts' role to

17

"judge the wisdom or desirability" of how DHS remedies that incongruence.  Cf. Heller v. Doe by Doe, 509 U.S. 312, 319 (1993).  The methods and procedures by which noncitizens are detained undoubtedly involve intricate details which the courts lack the Constitutional authority or practical resources to dictate.

IT IS THEREFORE ORDERED that petitioner's motion for temporary restraining order (Docket No. 12) be, and the same hereby is, DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262, the case is referred to the assigned magistrate judge for further proceedings.

Dated:  February 13, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE