UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KANATBEK ALMAZBEK UULU (A No. 221 347 089),

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al.,

Respondents.

No.  1:25-cv-1812 WBS CKD P

FINDINGS AND RECOMMENDATIONS

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner claims his detention violates his right to due process under the Fifth Amendment.  For the reasons which follow, the court recommends that the petition be denied.

I.  Facts

Petitioner is a native of Kyrgyzstan.  ECF No. 1 at 5.  On December 24, 2024, petitioner drove across the southern border of the United States with his pregnant wife[1] and child.  Id. at 6; ECF No. 12 at 2.  All three were detained shortly after they crossed when they could not provide

_____

[1] Petitioner's son was born in the United States in August, 2025.  ECF No. 12 at 3.

1

proper entrance documentation.  ECF No. 1 at 6.  Petitioner's wife and child were released into the United States ten days later, but petitioner has been in continuous detention since his arrest pursuant to 8 U.S.C. § 1225(b)(1) and is currently detained at the Golden State Annex ICE Detention Facility.  Id. at 5-6; ECF No. 12 at 2.   Petitioner claims to seek asylum, ECF No. 1 at 6, but it is not clear if he has filed a petition for asylum.

Petitioner's removal proceedings are ongoing.  His first hearing was held March 3, 2025, and the most recent February 25, 2026.  ECF No. 14 at 7-8.  Petitioner has appeared at approximately 8 hearings.  Id.  Nothing suggests petitioner or the Department of Homeland Security (DHS) have delayed the proceedings in bad faith.  The status of proceedings is not clear.

II.  Standard for Habeas Relief.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III. Analysis

The parties do not dispute that petitioner's detention since the time he was arrested shortly after crossing the border is authorized by 8 U.S.C. § 1225(b)(1).[2]  The only question before the

---

[2] The court notes that in Nadarajah v. Gonzales, 443 F.3d. 1069 (9th Cir. 2006), the Ninth Circuit held that immigration statutes such as 8 U.S.C. § 1225(b)(1) do not mandate indefinite detention and that detention is only mandated while removal remains "reasonably foreseeable."  More specifically, the Ninth Circuit read into the statutes that "after a presumptively reasonable six-month detention, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Nadarajah, 443 F.3d at 1078 (internal quotations

court is whether petitioner has a right under the Due Process Clause of the Fifth Amendment to at least a determination, by an immigration judge, whether he is dangerous or a flight risk and then release if it is determined he is neither.  The court notes that petitioner does not allege he is not free to leave detention by exiting the United States.

A.  Petitioner "On the Threshold" of Entry

In DHS v. Thuraissigiam, 591 U.S. 103, 140 (2020) the Supreme Court held that noncitizens who are "detained shortly after unlawful entry" such as petitioner are "on the threshold" of entry and have "only those rights regarding admission that Congress has provided by statute."  The court found this holding to be supported by "more than a century of precedent:"

> In 1892, the Court wrote that as to "foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law," "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." [Nishimura Ekiu v. United States, 142 U.S. 651, 660 (1892)].  Since then, the Court has often reiterated this important rule. See, e.g., [U.S. ex rel. Knauff, v. Shaughnessy, 338 U.S. 537 (1950)] ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned"); [Shaughnessy v. U.S. ex re. Mezei, 345 U.S. 206, 212 (1950)] (same); Landon v. Plasencia, 459 U.S. 21, 32, 103 S. Ct. 321, 74 L.Ed.2d 21 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative").

The Court recognized:

> "[T]he Constitution gives "the political department of the government" plenary authority to decide which aliens to admit, Nishimura Ekiu, 142 U.S. at 659, 12 S. Ct. 336; and a concomitant

omitted).  However, that interpretation of 8 U.S.C. § 1225(b)(1) was categorically rejected by the Supreme Court in Jennings v. Rodriguez, 583 U.S. 281, 297 (2018):

> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention.  And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

of that power is the power to set the procedures to be followed in determining whether an alien should be admitted, see Knauff, 338 U.S. at 544, 70 S. Ct. 309.

Some courts have found that the above principles only apply to admission of undocumented persons and not detention. E.g. Gao v. Larose, 805 F.Supp.3d 1106, 1110 (S.D. Cal., 2025). Such findings do not give adequate regard to the Supreme Court's decision in Mezei. Mr. Mezei lived in the United States as a resident alien for twenty-five years before returning to Europe for two years. Mezei, 345 U.S. at 216–17. When he attempted to return to the United States, he was denied entry and detained on Ellis Island for the duration of immigration proceedings which resulted in exclusion. Id. at 208. Because his home country refused to accept him, the Attorney General continued Mezei's detention on Ellis Island while pursuing other removal options. Id. at 209. Twenty-one months later, Mezei filed a habeas petition claiming his detention without a hearing violated his constitutional rights and seeking a bond hearing in federal court. Id. The Supreme Court found that because Mezei was merely "on the threshold of initial entry," "[w]hatever the procedure authorized by Congress is, it is due process as far as [Mezei] is concerned." Id. at 212. The decision to detain Mezei for a prolonged period pursuant to Congressional authority did not make his confinement unconstitutional. Id. at 215–16. See Zadvydas, 533 U.S. at 692-93 (it "made all the difference" that Zadvydas had entered the United States as opposed to Mezei who essentially had been "stopped at the border" with respect to a determination that Zadvydas was protected from indefinite detention by the Due Process Clause but Mezei received no such protection).

Some courts have attempted to distinguish Mezei, because Mr. Mezei was deemed a threat to national security. E.g. Xie v. Larose, No. 3:26-cv-01116 RBM MMP, 2026 WL 836351, *2-3 (S.D. Cal., March 26, 2026). However, Mr. Mezei being a security threat was considered in determining whether he was lawfully excluded from the United States as opposed lawfully detained at Ellis Island. Mezei, 345 U.S. at 210-212. The court found Mezei was lawfully excluded, had no right to statutory release and that his presence at Ellis Island confirmed no rights to Mezei over and above those granted by statute. Id. at 212.

/////

4

Ultimately, Congress has the power to decide which undocumented persons will be admitted to the United States.  Here, an order to the executive that petitioner must be considered for release usurps that power.  See Petgrave v. Aleman, 529 F. Supp. 35 665 (S.D. Texas, 2021).

While the court finds petitioner is not entitled to release or a hearing where release is contemplated, the court notes the petitioner's situation is unique because he has not "passed through our gates."  Mezei, 345 U.S.  at 212.  As the court has held before, a petitioner who is an "applicant for admission" as that term is defined in 8 U.S.C. § 1225(b), was released into the country premised upon either an explicit or implicit finding pursuant to 8 C.F.R. § 1236.1(c)(8) that that person (1) "would not pose a danger to property or persons" and (2) is "likely to appear for any future proceeding" has "passed through our gates" and is generally entitled to a hearing before termination of release.  E.g. Alomaliza v. Robbins, 1:25-cv-1735 WBS CKD P, 2026 WL 850839 (E.D. Cal., March 27, 2026).

B.  Indefinite Detention

Again, in Zadvydas, the Supreme Court found that with respect to a person who had "passed through our gates," indefinite detention raised "serious constitutional concerns."  Zadvydas, 533 U.S. at 682.  However, even if the concern with respect to indefinite detention from Zadvydas applies to persons who have not "passed through our gates," petitioner is still not entitled to relief.  As noted in Denmore v. Kim, 538 U.S. 510, 529 (2002) petitioner's authorized detention has a finite duration and will end at the termination of removal proceedings at which time petitioner will either be allowed to enter the United States or be subject to a final order of removal.  If a final order of removal is entered, detention would become authorized under 8 U.S.C § 1231 subject to any applicable limitation from Zadvydas if petitioner cannot be removed.  Further, petitioner fails to point to anything suggesting that, in particular, his removal proceedings can be construed as indefinite, as a result of bad faith or some other barrier to his receiving a decision with respect to his immigration status within an appropriate amount of time.[3]

---

[3] In his order denying petitioner's motion for a temporary restraining order (ECF No. 19), the district court judge assigned to this case agrees that petitioner's detention is not "indefinite" as that term is understood by the Supreme Court in Zadvydas.  Id at 14-17.

5

C. Prolonged Detention

In Rodriguez v. Marin, 909 F.3d 252, 256(9th Cir. 2018) the Ninth Circuit suggested that the Due Process Clause protects persons going through the removal / asylum process from arbitrary prolonged detention. Again, the court finds that since petitioner has never "passed through our gates" due process is the process afforded by statute. However, if petitioner does have a free-standing due process right to be free from arbitrary prolonged detention, that right has not been violated. While the Ninth Circuit has not articulated which factors the court should consider in determining whether detention is unconstitutionally prolonged, some district courts look to:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

Gao, 805 F. Supp. 3d at 1111.

Petitioner has been in custody approximately 15 months. The court has not been made aware of petitioner's current immigration status so the court cannot reasonably predict the likely duration of future detention. As mentioned above, prior to February 25, 2026, petitioner had at least 8 hearings related to his immigration status. Almost all of the continuances of the proceedings were granted for the benefit of petitioner, i.e. to obtain counsel or evidence. ECF No. 14 at 7-8. Petitioner complains about the food and air conditioning at the Golden State Annex, ECF No. 1 at 6, but the court views neither condition as extreme. Nothing before the court permits the court to make a determination as to whether petitioner will be subjected to a final order of removal with any degree of certainty.

All factors identified above having been considered, the court cannot find that petitioner's confinement is arbitrarily prolonged in violation of the Due Process Clause. Immigration proceedings are being conducted with reasonable pace, petitioner's confinement appears to coincide with proceedings authorized by statute (in other words, the premise that confinement accompanies the determination as to whether petitioner will be admitted does not appear to be

6

pretextual), see Soberanes v. Comfort, 388 F.3d 1305, (10th Cir. 2004) (fact that detention was "directly associated with a judicial review process that has a definite and evidently impending termination point" rendered detention allowable under Denmore, 538 U.S. 527-529), there is no evidence of bad faith premised delay by the government, and petitioner has failed to point to anything else suggesting unconstitutionally prolonged detention.

### D. Conditions

Finally, as indicated above, petitioner complains about conditions at the Golden State Anex Ice Detention Facility.  While petitioner does not necessarily allege his conditions of confinement warrant habeas relief, the court agrees with the reasoning in Cervantes v. Becerra, 1:25-cv-2058 KES SAB HC, 2026 WL 603742, *2 (E.D. Cal., March 4, 2026) and the conclusion that habeas relief is not available based upon a challenge to conditions of confinement and conditions of confinement should be challenged in a civil rights action or possibly a claim under Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be DENIED; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 6, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1/uulu1812.imm.frs

7